**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


CARLOS R. DAVIS                                                              **PLAINTIFF**


**VERSUS**                                   **CIVIL ACTION NO.  2:05cv2027KS-MTP**


**ALTACARE CORPORATION;
HEALTHPRIME, INC.; And
ADVENTIST HEALTH CENTER**                                      **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#75]** filed on

behalf of the defendants.  The court, having reviewed the motion, the response, the

pleadings and exhibits on file and being otherwise fully advised in the premises finds

that the motion is well taken and should be granted.  The court specifically finds as

follows:


## FACTUAL BACKGROUND

Plaintiff Carlos Davis (aka "Shaun Davis") was hired by Adventist Health Center,

Inc. as a licensed practical nurse (LPN) on July 24, 2003, and was terminated on or

about November 5, 2004.  Adventist is a long term health care facility doing business as

a Mississippi non-profit corporation with its principal place of business in Hattiesburg.

AltaCare Corporation and Healthprime, Inc., are Georgia for-profit corporations with

1

principal places of business in Georgia.  Both AltaCare and Healthprime provide human resources consulting services to health care facilities around the country and were under contract with Adventist for such services at all times complained of.

The plaintiff, a male African-American, has sued all three defendants herein alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981 and state law.  Specifically, he is alleging race and gender discrimination based on hostile work environment, disparate treatment, improper discharge, retaliation, negligent hiring and supervision, intentional and negligent infliction of emotional distress, and defamation.

The defendants have filed the present motion after the completion of discovery asserting entitlement to summary judgment on the grounds that neither AltaCare nor Healthprime were employers of the plaintiff and thus not subject to the discrimination claims of the plaintiff.  They also assert that Adventist is entitled to judgment because the plaintiff was terminated for cause, and not based on discriminatory animus, when he and another employee allowed a patient to die by refusing to respond to a "Code" call and then assisted in falsification of patient records to conceal the conduct.

The plaintiff contends that he was a model employee even in the face of ill treatment by his employer and co-employees.  However, the record in this case is replete with incidences of uncooperative, intimidating, improper and arrogant behavior on the part of the plaintiff.  Documented conduct that resulted in warnings and grievances against the plaintiff include threatening patients with the withholding of medications, rude behavior to patients and unauthorized contact with a physician's office in contravention of Adventist policy.  The plaintiff also filed at least two grievances

2

against a female co-employee which were investigated and found to be false and groundless. The plaintiff even threatened the female co-employee during the investigation of the grievances.

The incident that led to the plaintiff's termination occurred on July 14, 2004. On that date, the plaintiff and Rosie Johnson, a co-employee were on duty at Adventist when a "Full Code" was called when one of Johnson's patient's, Rita Brown, went in cardiac arrest. Adventist policy and state medical guidelines require all available personnel to respond to "Full Code" calls to assist in CPR and other revival procedures immediately upon the Code call. Instead of responding to the Code call, the plaintiff continued eating a sandwich and talking on a personal cell phone while Mrs. Brown died. The plaintiff then suggested to Rosie Johnson that she falsify Brown's chart to reflect that he and Johnson had used an Ambu bag on Mrs. Brown to assist in initiating CPR. A later investigation revealed that there was no Ambu bag in Mrs. Brown's room and the Ambu bag on the crash cart near Mrs. Brown's room had never been opened.

Two days after Mrs. Brown died, a patient filed a complaint against the plaintiff for arguing with him and threatening to take away his breathing treatment machine. Six weeks later, on August 27, 2004, the plaintiff was suspended for three days for threatening a female co-employee and for disrespect toward other employees at a company meeting. A month later, on September 27, 2004, the plaintiff was reprimanded for improperly filing a Medications Error Report against a co-employee.

In November of 2004, the in-house investigation of the Rita Brown incident was completed and, as a result, the plaintiff was suspended and then terminated for failing to provide CPR services to Mrs. Brown and then falsifying documents to indicate that

3

CPR had been performed.  This investigation also resulted in the termination of other employees as well.

Prior to his termination, the plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the EEOC) on October 5, 2004.  He amended his charge to include a claim for retaliation on November 7, 2004, after he was suspended which preceded his ultimate termination.  The EEOC issued a no cause finding and Right to Sue letter on April 22, 2005.  The plaintiff then instituted the instant litigation.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence

4

is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material." *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.

5

*Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


**AltaCare and Healthprime**

Defendants AltaCare and Healthprime assert that they are entitled to summary judgment on the basis that they are not the plaintiff's employer and thus not amenable to suit under discrimination law.  The plaintiff argues that AltaCare and Healthprime employees actually made the decisions relating to the disciplining and ultimate termination of the plaintiff.  However, the evidence indicates that both of these defendants were independent contractors to Adventist who made personnel recommendations to Adventist.  King, the director of nursing and an employee of Adventist made the ultimate decisions regarding the plaintiff.

The defendants are correct that Title VII remedies are available only against employers.  *See, Grant v. Lone Star*, 21 F. 3d 649 (5th Cir. 1994), *cert. denied* 513 U.S. 1015 (1994).  This circuit has established a four part test to determine employer status. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).  Those four considerations include: 1) interrelation of operations; 2) centralized control of labor relations; 3) common management; and 4) common ownership and financial control. *Id.*  The court has determined that item two, the centralized control of labor relations, is the most critical factor in determining employer status.  *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986).

The evidence in this case is clear that the plaintiff was hired and paid by Adventist and was directly supervised and disciplined by Sandra King, a co-employee at

Adventist.  King did consult with employees of AltaCare/Healthprime about the plaintiff but she is the one who made all final decisions regarding his employment status with Adventist.  King is the one who made the final determination to terminate the plaintiff.

There is no evidence that Adventist was commonly owned or controlled by either of the other two defendants.  Indeed, Adventist is a Mississippi non-profit corporation while AltaCare and Healthprime are both for-profit Georgia Corporations.  They have no joint financial interests or control.  Adventist merely contracts with AltaCare and Healthprime for personnel and management related services.  A close consideration of all of the above factors indicates that Adventist is the "employer" of the plaintiff for purposes of discrimination law.  The plaintiff has shown no evidence to create a genuine issue of fact otherwise.  On this basis alone, AltaCare and Healthprime are entitled to summary judgment.

## Plaintiff's Title VII Claims

In order to prevail in a Title VII discrimination suit, the plaintiff must prove intentional discrimination.  *Jones v. Flagship International*, 793 F.2d 714, 719 (5th Cir. 1986).  Thus, the factual inquiry is whether "'the employer [is] treating some people less favorably than others because of their race, color, religion, sex, or national origin.'"  *Id.* (*quoting United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983)(other citations omitted)).  The plaintiff has also invoked the protections of 42 U.S.C. § 1981 in regard to his discrimination claims.  The law in this circuit regarding employment discrimination cases is that the elements of substantive claims under 42

U.S.C. § 1981 and Title VII (42 U.S.C. § 2000(e)) are the same.  *Rivera v. City of Wichita Falls*, 665 F. 2d 531, 534, fn. 4 (5th Cir. 1982).  *See also, Page v. U.S. Industries, Inc.*, 726 F. 2d 1038, 1041, fn. 2 (5th Cir. 1984).  Thus, the § 1981 claims will be considered in conjunction with the plaintiff's Title VII claims.

The burden rests with the plaintiff to prove his case by a preponderance of the evidence, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093, 94, 67 L.Ed.2d. 207, 215 (1981); he may do so by offering either direct evidence of discriminatory animus or by offering circumstantial evidence sufficient to support an inference of discrimination.  *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir. 1980).  *See also Lee v. Russell County Bd. of Education*, 684 F.2d 769, 773-74 (11th Cir. 1982).  The plaintiff has conceded that he does not have any direct evidence of discrimination.  Thus, in order to prevail in the absence of direct evidence of discrimination, the plaintiff must first establish a *prima facie* case of discrimination.

*McDonnell Douglas Corp. v. Green,*   411 U.S. 792, 93 S. Ct. 1917, 36 L.Ed.2d. 668 (1973), recognized the difficulty of proof for Title VII claimants who rely on circumstantial evidence to prove discrimination.  The Court responded by establishing an order of presentation of proof and an allocation of the burden of production for Title VII claimants. The burden rests with the plaintiff to establish a *prima facie* case of discrimination.  Once the plaintiff meets that burden, the defendant must then articulate some legitimate, nondiscriminatory explanation for the adverse employment action. Finally, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the explanation offered by the defendant is a pretext for discrimination.

*Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d. 207 (1981).

As the Fifth Circuit has explained, a "plaintiff can demonstrate that the reason was pretextual in two ways, 'either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer, or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Hall v. Gilman, Inc.*, 81 F. 3d 35, 37 (5th Cir. 1996), citing *Thornbrough v. Columbus and Greenville R. Company*, 760 F. 2d 633, 639 (5th Cir. 1985)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 8, 101 S. Ct. 1089, 1094, n. 8, 67 L. Ed. 2d 207 (1981)). The court is mindful that this matter is being considered at the summary judgment and "the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Id.,*(citing *Thornbrough*, 760 F. 2d at 646).

> Thus a jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains.  The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

*Rhodes v. Guiberson Oil Tools*, 75 F. 3d 989, 994 (5th Cir. 1996) (en banc).

Finally, in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court held that a plaintiff is not entitled to prevail merely by proof that a defendant's stated reason for the employment actions is pretextual.  The Fifth Circuit, interpreting *St. Mary's Honor Center,* held: "To prevail

ultimately, the plaintiff must prove, through a preponderance of the evidence, that the employer's reasons were not the true reason for the employment decision <u>and</u> that unlawful discrimination was." *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir. 1993).

The United States Supreme Court gave additional guidance on the burden shifting analysis enunciated in *McDonnell Douglas* in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).[1] The Court held that meeting the requirement of showing a *prima facie* case of discrimination coupled with sufficient proof to allow a jury to determine that the employer's stated nondiscriminatory reason is false is sufficient to support a verdict. Previously, this Circuit had analyzed Supreme Court precedent to require something beyond a *prima facie* case and rebuttal of the employer's nondiscriminatory reason. In *Reeves*, the Fifth Circuit had reversed a jury finding of liability when a plaintiff had in fact proved a *prima facie* case of age discrimination and had offered substantial proof to show that the employer's nondiscriminatory reason for the discharge was false. 197 F.3d 688 (5th Cir. 1999).

In resolving a conflict among the Circuits, the Supreme Court reversed the Fifth Circuit and stated "Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

---

[1] While the *Reeves* case dealt with a judgment as a matter of law the Court acknowledged that the same standard for judging a motion under Rule 50 is applied under Rule 56 as "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves,* 530 U.S. at 150 (*quoting Anderson v. Liberty Lobby Inc.*, 477, U.S. at, 250-251; *see also, Celotex Corp. v. Catrett*, 477 U.S. at 323).

However, the unanimous *Reeves* Court went on to hold "an employer would be entitled

to judgment as a matter of law if the record conclusively revealed some other,

nondiscriminatory reason for the employer's decision, or if the plaintiff created only a

weak issue of fact as to whether the employer's reason was untrue and there was

abundant and uncontroverted independent evidence that no discrimination had

occurred." *Id.*


**Hostile Work Environment**

.  In order for the plaintiff to establish that his work environment was in fact hostile, he

must prove:  "(1) [racially] discriminatory intimidation, ridicule and insults, which are (2)

sufficiently severe or pervasive that they (3) alter the conditions of employment and (4)

create an abusive working environment."  *DeAngelis v. El Paso Municipal Police*

*Officers Association*, 51 F.3d 591, 594 (5th Cir. 1995)(citing *Meritor Savings Bank v.*

*Vinson*, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

To support his claim of hostile work environment, the plaintiff asserts that he was

subjected to disparaging remarks by co-employees.  Specifically, he alleges that Nurse

Beatrice Goings called him "stupid, ignorant and childish."  While such remarks by a co-

employee may certainly be disparaging, they implicate neither the plaintiff's race nor

gender.  Nor has the plaintiff shown that such remarks were severe and pervasive so as

to create an abusive work environment.  All the plaintiff has shown is two or three

instances of verbal spats with Nurse Goings in which she allegedly made such remarks.

Nor has the plaintiff shown that such remarks were endorsed or even tolerated by

Adventist.  Indeed, each time the plaintiff complained of stray remarks by Nurse Goings, Adventist had the incident investigated.  Each time, the investigation revealed little or no substance to the plaintiff's complaints.

**Disparate Treatment**

In order to present a *prima facie* case of disparate treatment, the plaintiff must offer proof that he: 1) was a member of a protected class; 2) was qualified for the positions he held; 3) was subject to an adverse employment action; and 4) that others similarly situated were treated more favorably.  *See Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507 (5th Cir. 2001).  Assuming that he cam meet the first three elements, the defendants and the plaintiff concentrate on the fourth element, which, to satisfy, the plaintiff is required to offer proof that he was disciplined and/or ultimately fired for conduct "nearly identical" to that of a [female] employee who was not disciplined or fired.  *See Wallace v. Methodist Hosp. Systems,* 271 F.3d 212, 221 (5th Cir. 2001).

To satisfy this prong, the plaintiff asserts that he was treated differently than a female co-employee, Nurse Beatrice Goings, a female.  He asserts that on at least three occasions, Goings verbally attacked him and made disparaging remarks to and about him.  He also asserts that she was tardy for her shift and was absent without leave, which, when he reported it, resulted in him (the plaintiff) being reprimanded.  He asserts that Goings was never reprimanded or disciplined for any of her verbal attacks or tardiness or absence.

13

However, the evidence presented controverts that plaintiff's assertions about the incidents with Goings.  The proof shows that Adventist thoroughly investigated each of the incidents involving Goings and the plaintiff and reached the conclusion each time that the plaintiff's allegations and complaints were false and unfounded.  The investigations in fact concluded that the plaintiff was the aggressor in each instance and actually threatened Goings in one meeting attended by several Adventist employees. The plaintiff has failed to offer proof to create a genuine issue of fact that he was treated differently than a female co-employee in "nearly identical" circumstances.  This is fatal to his disparate treatment claims.


**Sex/Gender Discrimination Claims**

The plaintiff has filed a claim for gender/sex discrimination based on the fact that he was the only black male LPN in defendant's employ.  In order to support a claim of gender discrimination, the plaintiff would have to offer proof that similarly situated female employees were treated more favorably than he was.  *See, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L.Ed.2d. 207, 215 (1981).

The plaintiff seemingly melds this claim into his disparate treatment claim by continuing to assert that he was treated differently than female co-employees.  He also adds a wrinkle by alleging that he was replaced by a white female.  But, once again, the plaintiff's proof comes up well short of showing a genuine issue of fact on this claim. He in fact offers nothing more on this claim than was offered on his disparate impact claim but that he was replaced by a white female.  That fact alone, even if it was true,

14

would not support a gender discrimination claim in the face of Adventist's proffered legitimate non-discriminatory reason for the plaintiff's termination which the plaintiff has failed to refute.

## Retaliation Claim

In order to present a successful retaliation claim the plaintiff must establish his *prima facie* case by offering proof that (1) he was engaged in protected activity under Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.  *See, McMillan v. Rust College Inc.*, 710 F.2d 1112 (5th Cir. 1983) and *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996).  The plaintiff must show that the employer's given reason for the termination was false and that discrimination was the real reason. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319-20 (5th Cir. 1999).  Timing between the filing of an EEOC charge and the termination may be relevant in determining whether a termination is retaliatory.  *Means v. B & G Food Enters., Inc.*, 2006 WL 2632568 (S.D. Miss. 2006); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992).

The plaintiff's main argument for retaliation is the timing of the discharge.  He filed his initial charge on October 5, 2004, and was suspended on November 5, 2004, and then terminated.  However, the defendant was well into the investigation of the Rita Brown matter at the time the plaintiff filed his EEOC charge and had documented several other instances of malfeasance on the plaintiff's part well before the charge of

discrimination was filed.  The fact that the investigation was completed and the plaintiff's termination resulting therefrom occurred within close proximity to the plaintiff's EEOC filing is merely coincidental and does not evince discriminatory animus under the undisputed facts of this case.

Thus, the court finds that the plaintiff has failed to present a *prima facie* case of either race or gender discrimination.  Assuming, *arguendo* that he has, the defendant has presented a legitimate non-discriminatory reason for the plaintiff's discipline and termination.  He has presented not one iota of evidence to rebut the defendants' proffered explanation for his termination nor has he offered any proof that such reason was discriminatory.  Indeed, the court finds that the proffered reason for the plaintiff's termination was both legitimate and non-discriminatory.

**State Law Claims**

**Negligent Infliction of Emotional Distress, Negligent Hiring Supervision and Retention.**

The plaintiff has conceded that his negligence claims are subject to the exclusivity provisions of the Mississippi Worker's Compensation statutes or are otherwise not viable.  These claims are thus dismissed with prejudice.

**Intentional Infliction of Emotional Distress**

The plaintiff alleges that the defendants' willful, wanton and reckless disregard for his rights and interests, inflicted emotional distress on him.  In order to state a cause

of action under Mississippi law for the tort of intentional infliction of emotional distress, the defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron USA, Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004), *reh'g denied*, 2004 Miss. App. LEXIS 513 (Miss. Ct. App. 2004) (citation omitted); *see also Eaves v. K-Mart Corp.*, 193 F.Supp. 2d 887, 894 (S.D. Miss. 2001) ("To be actionable, a defendant's conduct should evoke outrage or revulsion."). Thus, a cause of action does not lie for "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Raiola*, 872 So. 2d at 85.

In light of this high standard, therefore, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001) (citations omitted); *see also Raiola*, 913 F.Supp. at 982 (same). In general, causes of action for intentional infliction of emotional distress within the context of a workplace environment are "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Lee*, 797 So. 2d at 851 (citations omitted); *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982-83 (N.D. Miss. 1996) (same) (citations omitted).

Indeed, the Fifth Circuit has noted that "[o]nly in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654-55 (5th

17

Cir. 1994), *reh'g denied en banc*, 1994 U.S. App. LEXIS 10164 (5th Cir. 1994). *Accord*

*Brown v. Inter-City Fed'l Bank for Savings*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999)

("More is required to support an intentional infliction of emotional distress recovery than

the usual age discrimination claim.").

The plaintiff has failed to produce any significant evidence which would support a

claim for intentional infliction of emotional distress.  His only substantive assertion is

that the defendants tried to take his "livelihood and freedom away" by terminating him

and then reporting his conduct to the Mississippi State Board of Nursing.  Having found

that the defendants acted with just cause and without discriminatory animus, these

claims shall be dismissed with prejudice.


**<u>Defamation</u>**

The plaintiff contends that he was defamed when the defendants reported the

results of its investigation of the Rita Brown matter to the Mississippi State Board of

Nursing.  To establish a claim for defamation, the plaintiffs must prove the following:

> (1) a false and defamatory statement was made concerning the plaintiff[s];
> (2) there was an unprivileged communication to a third party; (3) the
> publisher was [at least] negligent in publishing the defamatory statement;
> (4) the plaintiff suffered damages resulting from publication of the
> defamatory statement.

*Mitchell v. Random House, Inc.*, 703 F.Supp. 1250, 1255 (S.D. Miss. 1988), *aff'd*, 865

F.2d 664 (5th Cir. 1989). *See also Pittman v. Gannett River States Pub. Corp.*, 836

F.Supp. 377, 381 (S.D. Miss. 1993).  "The threshold question in a defamation suit is

whether the published statements are false."  *Franklin v. Thompson*, 722 So.2d 688,

18

692 (Miss. 1998).  The resolution of this question is an issue for the court.  *Gales v.CBS Broadcasting, Inc.*, 269 F.Supp.2d 772, 778 (S.D. Miss. 2003), *aff'd*, 124 Fed.Appx. 275.  Truth is a complete defense to an action for defamation.  *Blake v. Gannett Co., Inc.*, 529 So.2d 595, 602 (Miss. 1988).

Further, under Mississippi law, a statement made by an employer about an employee when the statement in question affects the employee's employment is subject to a qualified privilege.  *Young v. Jackson*, 572 So.2d 378, 383 (Miss. 1990). The privilege is also available to an employer who reports truthful information about an employee to a government agency.  *Smith v. St. Regis Corp.*, 850 F.Supp. 1296, 1321 (S.D. Miss. 1994).  The privilege applies in the absence of bad faith or malice on the part of the employer.  The plaintiff has shown no such bad faith or malice in the reporting of the facts discovered in the death of Rita Brown to the Mississippi State Board of Nursing nor has he provided any evidence that the information reported was not true.  These claims shall be dismissed with prejudice.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendants' Motion for Summary Judgment **[#75]** is Granted and the plaintiff's complaint is dismissed with prejudice and that all other pending motions are dismissed as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 9th day of July, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE